UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **LARRY W. PACE** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| **COMPUTEX TECHNOLOGY** | § | |
| **SOLUTIONS** | § | Jury Demanded. |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Larry W. Pace ("Pace"), complaining of Defendant, Computex Technology Solutions, and for cause of action would show the Court as follows:

## I.
## PARTIES

1. Pace is a natural person and a resident of Galveston County, Texas.

2. Computex Technology Solutions ("Computex") is a Texas Corporation with its principal place of business at 5355 West Sam Houston Parkway N#390, Houston, Texas 77041.

3. Defendant Computex may be served with process by serving its registered agent: Sam M. Haffer at 5355 West Sam Houston Parkway N#390, Houston, Texas 77041.

## II.
## JURISDICTION

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331.

## III.
## VENUE

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Harris County, Texas.

## IV.
## EXHUSTION OF ADMINSTRATIVE REMEDIES

6. Plaintiff fully exhausted his administrative remedies and has fulfilled all jurisdictional prerequisites to the filing claims. Plaintiff filed an employment discrimination charge against Defendant with the EEOC on August 13, 2020, the EEOC issued a Notice of Right to Sue. Plaintiff filed this pleading within 90 days from his receipt of such notice.

## V.
## FACTS

7. Computex hired Pace as a Network Operation Center ("NOC") Supervisor on January 21, 2019. Pace brought over thirty years of industry experience to Computex. Pace had worked in numerous industries including finance and banking, school district campus support, airline and travel, multi-state power utility, energy and oil and gas and multi-client network operations center monitoring and help desk support.

8. Pace reported to Amanda Buchler ("Buchler") under Vice President of Managed Service Operations Robert Valentinis ("Valentinis"). As NOC Supervisor, Pace supervised a dozen people providing IT Support and Systems Monitoring for approximately 200 customers. Training, Mentoring and Developing staff was a large portion of his position. During his time at Computex Pace hired or converted approximately ten employees.

9. Pace excelled in his position receiving positive feedback until September of 2019 when he requested and scheduled medical leave. Pace previously had a heart mitral valve repair

in 2012.  In the fall of 2019, Pace's mitral valve repair failed and required replacement.   In early to mid-July, Pace told Buchler and Director of Human Resources, Nicole Brown ("Brown") that he that he would require time off for medical appointments relating to his heart and eventual surgery.

10. During the work-up and treatment of his heart repair, the doctors found problems with Pace's liver.  His bloodwork showed problems and he had spots on his liver.  His doctors instructed him to wait until he completely recovered from his heart surgery to seek treatment for the liver condition.  Pace told Buchler and Brown about his liver diagnosis prior to leaving for his heart surgery in September of 2019.   Pace was eventually diagnosed with liver carcinoma.

11. On Monday July 29, Pace told Valentinis that he would need to take time off for heart surgery.  Valentinis was visibly upset by this news.  He demanded that Pace tell him exactly how much time he would take off.  He then cut Pace off and told him that he was going to have to get someone in to replace Pace because "these people cannot go unmanaged and unsupervised."  At no point in that conversation did Valentinis express any concern for Pace or his condition.

12. Computex hired Leslie Biffle as a contract employee to temporarily cover Pace's position during his medical leave.  Pace trained Biffle to cover his job.  Pace was concerned that Computex would use Biffle to replace him and that he would be terminated after his disability leave.  He discussed these concerns with Buchler, Brown and Valentinis.  Indeed, in a Managers and Leadership conference phone call just before his medical leave,  Pace told Valentinis that he wanted to ensure that he would have a desk to sit at when he returned from medical leave.  Valentinis was annoyed but did promise Pace he would have a job when he returned.

13. On September 11,  days before Pace was scheduled to start medical leave, he was disciplined for the first time when Buchler verbally counseled Pace regarding his schedule and late

arrival to work[1]. Upon information and belief, Pace was held to a higher standard than his coworkers who were not required to strictly adhere to their work schedule.

14. Pace took off from October 14 to November 5, 2019, for the valve surgery and recovery. During the medical leave, Biffle was hired permanently into Pace's position. When Pace returned from medical leave, he was demoted to the position of NOC Coordinator and lost supervisory responsibility. He was asked to assist Buchler with processes, procedures and workflow and assist Biffle with his NOC Supervisor role. Pace asked Buchler for a job description and she said they did not have one yet. His new position did not appear on the organization chart.

15. Immediately after Pace returned from leave, Valentinis told him "don't get comfortable sitting there. I may have another place to put you." Pace asked Buchler what Valentinis meant, and she explained that she and Valentinis had different ideas about what his position should be. This tug of war caused Computex to delay providing Pace with a real job title and description.

16. Throughout December and January Pace talked to Brown about his liver cancer and told her that he was concerned that he was going to be fired if he took time off for treatment. He also complained to Brown that he thought he was going to be fired because he did not have a formal position, job description and was not on the company's organization chart.

17. Pace also complained to Brown that he thought Robert Valentinis was trying to force him out because Valentinis required Pace to disclose his physical therapy schedule to him rather than just to his direct supervisor, Buchler. This was a different process from other employees who were not required to tell Valentinis when they would be leaving work early.

---

[1] Pace was originally scheduled to have heart surgery in September. The surgery was pushed back into October and Pace returned to work in September and rescheduled the medical leave to start in October.

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND – PAGE 4**

18. During a Management and Leadership meeting on February 14, Pace told Buchler and Valentinis that "my concern is that I am doing a job that I don't have a job description for" and I don't know what is expected or required of me. Valentinis responded by telling Pace well Faisal wants to make sure that you and Biffle do not have jobs that overlap. We need to make sure that you are providing value in your new position quickly to justify maintaining both positions. Pace asked, "when will I have a job description so that I know what value to provide?"

19. In late November, one of the new tasks provided to Pace was to run monthly systems reports provided to Computex's clients ("MVP reports"). These MVP reports were typically provided to customers during the first week of the month. Pace became responsible for this task in December of 2019. Prior to Pace being given this task, the On-Boarding Group had mistakenly provided customer data to the wrong customers. Valentinis told Pace about this mistake and explained that if data gets sent to the wrong customer again someone will be fired. Pace understood that Valentinis wanted him to make sure the reports sent to the customers were accurate and complete.

20. Pace struggled with this new task because there was no process or instructions in place. The employee that had previously handled the task and knew how to properly run the reports had left the company and Pace was forced to create a process and learn to generate the reports from scratch with no training or instructions.

21. In December 2019, Computex moved their system reporting from Kaseya to Connect Wise. The system transition did not run smoothly, and the first round of reports contained inaccurate data. Pace caught the inaccuracy and reported the problem to his superiors before the reports were sent to the customers. The inaccurate data was generated because of the system

conversion. It took time to correct this technical issue, and this caused the January customer reports to be sent to the customers late.

22. In late January, Pace applied for intermittent FMLA leave to allow him to take off time as necessary for the treatment of his liver cancer. Computex approved his intermittent FMLA leave. Pace took less than five days of intermittent leave in February and March of 2020.

23. On March 22, Pace was fired for performance. Pace asked Valentinis what the performance issues were and Valentinis said it is the client reports. Pace told Valentinis that he was shocked because nobody had ever talked to him about any alleged performance issues with the reports prior to his termination and also because the client report issue in January had not been his fault but was a result of the new system.

24. Upon information and belief, several of Pace's comparators were not terminated or disciplined for performance issues that were similar or more severe than Pace's alleged performance issues.

## VI.
## CAUSES OF ACTION

### Count One – Americans with Disability Act – Disability

25. Plaintiff incorporates Paragraphs 7 – 24 as though fully set forth herein.

26. At all times material to this action Defendant was an "employer" as defined by 42 USC § 12111(5)(A). Defendant is therefore subject to the provisions of the Americans with Disabilities Act.

27. Plaintiff's heart condition limited his ability to walk, sit and work within the meaning of 42 USC § 12102. Plaintiff's liver cancer limited his ability to digest, metabolize, and process foods, nutrients and chemicals within the meaning of 42 USC § 12102.

28. He was qualified for his position. By terminating Plaintiff's employment, Defendant took adverse action(s) against him.

29. Defendant took such adverse action because of Plaintiff's disabilities and requests for accommodation.

### Count Two–Americans with Disability Act – Failure to accommodate

30. Plaintiff incorporates Paragraphs 7-24 as though fully set forth herein.

31. At all times material to this action Defendant was an "employer" as defined by 42 USC § 12111(5)(A). Defendant is therefore subject to the provisions of the Americans with Disabilities Act.

32. Plaintiff's heart condition limited his ability to walk, sit and work within the meaning of 42 USC § 12102. Plaintiff's liver cancer limited his ability to digest, metabolize, and process foods, nutrients and chemicals within the meaning of 42 USC § 12102.

33. He was qualified for his position and could have continued to work with reasonable accommodations.

34. Defendant failed to accommodate Plaintiff by terminating him instead of allowing him to take intermittent leave during his cancer treatment.

### Count Three- Americans with Disabilities Act- Retaliation

35. Plaintiff incorporates Paragraphs 7-24 as though fully set forth herein.

36. At all times material to this action Defendant was an "employer" as defined by 42 USC § 12111(5)(A). Defendant is therefore subject to the provisions of the Americans with Disabilities Act.

37. Plaintiff engaged in protected conduct as defined when he complained to Brown and Buchler regarding his treatment after he returned from medical leave. Plaintiff opposed

disability discrimination by complaining about his discriminatory treatment and his concern that he would be terminated for taking medical leave.

38. He was qualified for his position. By terminating his employment, Defendant took adverse actions against him. Defendant took such adverse actions in retaliation for Plaintiff's protected conduct in complaining about discriminatory treatment and failure to accommodate.

### Count Four– Family and Medical Leave Act – Retaliation

39. Plaintiff incorporates paragraphs 7-24 as though fully set forth herein.

40. The FMLA prohibits retaliation for availing oneself of his rights under the FMLA. Plaintiff must show that he was protected under the FMLA, he suffered an adverse employment action, and that a causal link exists between the protected activity and the adverse action.

41. In this case, as set forth above, Plaintiff was protected under the FMLA. He took intermittent FMLA leave to treat his cancer and he was singled out for discipline and terminated less than two months after applying for and utilizing approved intermittent FMLA leave. His termination was because he exercised his right to take FMLA leave.

## VII.
## PRAYER

42. Plaintiff respectfully requests that this Court grant the following relief from Defendant:

A. A declaratory judgment, declaring Defendant's past practices herein complained of to be unlawful;

B. Back pay, front pay, pension benefits, stock options, bonuses, health benefits, and any other relief necessary to compensate Plaintiff;

C. Punitive and Liquidated damages;

D. Prejudgment and post-judgment interest;

E. Attorney's fees necessary for prosecution of Plaintiff's claims;

F. Costs for the prosecution of Plaintiff's claims, including the costs of expert witness fees; and

G. Such other general relief to which Plaintiff shows himself justly entitled.

## VII.
## JURY DEMAND

43. Plaintiff requests that all ultimate fact issues be submitted to a jury for determination.

He has paid the jury fee.

Respectfully Submitted,

_____
JANE LEGLER
Texas State Bar No. 03565820
Federal ID No. 248611
jane@nlcemployeelaw.com
CHRISTINE NEILL
Texas State Bar No. 00796793
Federal ID No. 109167
christine@nlcemployeelaw.com
KYLA GAIL COLE
Texas State Bar No. 00796793
Federal ID No. 1137737
kyla@nlcemployeelaw.com

**NEILL LEGLER COLE, PLLC**
3141 Hood Street, Ste. 200
Dallas, Texas 75219
(214) 748-7777
(214) 748-7778 (Facsimile)
**ATTORNEYS FOR PLAINTIFFS**